NATHANIEL R. ALLEN ET AL. v. OLIVER A. LUCKETT.

[48 South. 186.]

DEEDS.  *Cancellation.  Reformation.  Mistake.  Equity jurisprudence.*

A material mistake by one or both parties to a deed as to the identity, situation, boundaries, title, amount or value of the land conveyed by it will warrant appropriate equitable relief, although its terms accord with the intent of the parties.

2. SAME.  *One party relying on the representations of the other.  Actual fraud not essential.*

Where the purchaser was more familiar than the seller with the boundaries of the land and the grantor, relying on the representation of the grantee, executed a deed, believing that it conveyed a small when it conveyed a large acreage, a court of equity will cancel the deed, although actual fraud was not proved.

3. APPEAL.  *Code 1906, § 4926.  Damages.  Value of land.*

An unsuccessful appeal from a decree cancelling a deed to land and awarding possession, entitles the appellee, under Code 1906, § 4926, so providing, to recover damages, five per centum on the value of the land.

FROM the chancery court of Leake county.

HON. JAMES F. McCOOL, Chancellor.

Luckett, appellee, was complainant in the court below; Allen and others, appellants, were defendants there.  From a decree in complainant's favor defendants appealed to the supreme court.

Appellee was the owner of four hundred and eighty acres of timber land, in section 29, township 10, range 7 E., Leake county.  The land was wild and situated in a river bottom a considerable distance and in another county from his residence. In January, 1900, he made a trade with appellants to sell them "that part of the east half and the east half of the west half of said section lying north of Pearl river" for the sum of $50.  He gave appellants a deed describing the property as above, and received part payment at the time, and the balance in March, 1901, on which date another deed was executed; the first deed having

been lost before being put of record.   In this latter deed, the land was described as "that part of the east half, and the east half of the west half, north of Pearl river, 50 acres, more or less."   Afterwards, in 1905, Luckett began this suit, charging the above facts and alleging, further, that it was the intention of the grantor to convey only fifty acres of land; and that it was understood that Allen was to purchase land at the rate of $1 per acre; that complainant was not familiar with the boundaries of the property, but relied upon the representations of the purchaser that there were only about fifty acres lying north of Pearl river; that complainant, after the execution of the second deed, learned there was about two hundred acres in the tract north of Pearl river, demanded of appellants that they correct the mistake, which they refused to do, claiming that they had purchased the entire tract lying north of Pearl river, regardless of the number of acres.   The bill prayed for the cancellation of the deed and for a writ of assistance to place complainant into possession of the land upon complainant's refunding the purchase price, with interest.

  *McMillon & Howard,* for appellants.
  We find very few cases where a suit like this one has been brought by a vendor against his vendee, and these are cases where the vendor was weak mentally or was a non-resident without opportunity to become acquainted with the property, and none of them, we take it are applicable to this case.   We find, however, cases brought by vendees against vendors and even in them it is shown to be the duty of the vendee to examine for himself where he had as good opportunity to know the facts and had no special reason or necessity to depend on the vendor's representations, even if the vendor expressed an opinion and it proved erroneous, there is no ground for rescission.   *Hall v. Thompson,* 1 Smed. & M. 443; Beach on the Modern Law of Contracts, §§ 804, 817.
  There is no reason to believe from the evidence that Allen

knew more about the land than Luckett, who had every opportunity to know its value, number of acres, etc. He had owned it for a number of years, had hunted over it and fished in the lakes and streams running through it, and was quite an extensive dealer in lands on Pearl river; while Allen did not have any better reason or opportunity, to say the least of it, to know the land. He was not county surveyor at the time the sale was made and had never been, but was elected in 1899 and did not begin the duties of this office or run lines until afterwards.

Notice the unreasonableness of appellee's contention; he claims that he wrote the deeds intending only to convey fifty acres and that this fifty acres were to be in the extreme northern part of the section and yet he describes the land in the deed so that all the E. ½ and E. ½ of W. ½ north of the river is included, although the river might have proved to run through the extreme southern part of the subdivisions. In deeds descriptions which are most certain and material, as metes and bounds, will control that which is less so, as quantity. *Carmichael v. Foley,* 1 How. (Miss.) 591; *Potts v. Canton Warehouse Co.,* 70 Miss. 462, 12 South. 147.

The number of acres were not a condition of the trade and a sale is not voidable because of a mutual mistake as to collateral facts unknown to both parties and as to which the sources of information were open alike to both. *Sample v. Bridgforth,* 72 Miss. 293, 16 South. 876; 15 Am. & Eng. Enc. Law (1st ed.) 647, note 3.

*W. A. Ellis,* for appellee.

Luckett was a lawyer and Allen a surveyor at the time of the sale. Lawyers are presumed to know the law of land titles and surveyors are presumed to know courses and distances and the courses of meandering streams and the general topography of the country, to locate corners and run land lines and calculate areas and call them by their right names. These may be violent presumptions, but such is the presumption and common sense of the

matter. Really, the means of information and knowledge in the present case, as to the acreage in question and the boundary lines are superior in Allen. He owned adjoining land and actually resided on it and at one time owned a part of the identical land in suit.

Surely there was a mutual mistake and a very great one at that. To put it as mildly as possible there was a great mistake made. Allen had no idea of getting one hundred and ninety-eight acres of land for fifty dollars, and it appears from the depositions of appellee and the charges in the bill, that he would not have under any circumstances sold this tract of land north of the Pearl river in the subdivisions named had he known that there was so much land over there. He acted upon the hypothesis that there were only fifty acres of land in this body and this information partly, was communicated to him by Allen himself. So then, something is wrong. Appellants refused to rectify, and hence the court is called on to do equity in the premises. The learned chancellor below has passed upon the facts and his finding is fully supported by the great preponderance of testimony in this case, and by right and justice and good conscience, and his decree should be affirmed because it cannot be confidently stated that it is manifestly wrong. This case is one that must stand or fall upon its peculiar facts. The appellee has met the burden and appears in this court with a decree of the chancellor certifying to that fact and it is the invariable rule of this court to affirm in such a case. The words "more or less" have been judicially construed in many cases. We cite the court to the following: 15 Am. & Eng. Ency. of Law (1st ed.) 717, 718, 719, as illustrating the case in some of its forms. See the following cases in Mississippi: *Phipps v. Carpenter* 24 Miss. 697; *Miles v. Miles,* 84 Miss. 624, 37 South. 112; *Kerr v. Kuykendall,* 44 Miss 137

*May, Flowers & Whitfield,* on the same side.

Both parties were innocently mistaken. If it is worth the in-

quiry to find out which of the parties was in better position to know the real facts, it will be found that Allen had the advantage. He lived near this land and owned a part of section 20 whose southern boundary line is the northern boundary line of section 29. One of the lines, therefore, about which the parties seemed to have been so badly mistaken is the boundary of part of Allen's land. Besides Allen had been or perhaps was at the time, acting as surveyor of the county. He had expert knowledge of such things and his familiarity with them would naturally cause him to inquire about that and especially to have some idea as to the location of his own boundaries. Luckett says that Allen pointed out to him a line stating that it was the northern boundary line of the section and that this line was not very far from the river. The chancellor found for the complainant on the facts. He cancelled the deed made to Allen on the 12th of March, 1901, and that made on the 29th day of January, 1900. He could not have done otherwise if he granted any relief at all to complainant. He certainly could not require the complainant to deed to the defendants some particular fifty acres north of the river, nor could he justly require the complainant to deed the entire two hundred acres at one dollar per acre. The mistake was so material as to make it necessary to set aside the pretended contract, for there was in fact no contract. The minds of the parties never did meet upon the subject matter of the contract, its location or amount.

We think there is no necessity for the citation of authorities to show that equity will relieve in cases of this kind whether the situation was created by fraud or mistake. As we have said, we are willing here to rest the case upon the theory that this situation was created by the mutual mistake of the parties. We call the court's attention, however, to the well considered case of *Bigham v. Madison* (Tenn.), 47 L. R. A. 267.

Argued orally by *J. N. Flowers,* for appellee.

FLETCHER, J., delivered the opinion of the court.

On this record the chancellor must have concluded that Allen was more familiar with the boundaries of the land than was Luckett, that Allen pointed out these boundaries, that the sale was made upon the faith of these representations, that the sale was by the acre, and that apppellee did not intend to convey more than fifty acres; whereas, in truth, nearly two hundred acres were conveyed. We are not warranted in overthrowing this finding of fact.

Upon this state of facts the jurisdiction of a court of equity to decree rescission of the contract and cancellation of the conveyance is well established. It is immaterial whether actual fraud be imputed to appellant. The result is the same, if the transaction was the result of a mutual mistake. If the terms are stated according to the intent of the parties, but there is an error of one or both in respect of the thing to which these terms apply—its identity, situation, boundaries, title, amount, value, and the like—then it is elementary that a court of equity may grant appropriate relief, provided the fact about which the mistake occurs was a material element in the transaction. 2 Pomeroy's Equity Jurisprudence §§ 852, 253; *Bigham v. Madison,* 103 Tenn. 358, 52 S. W. 1074, 47 L. R. A. 267.

The court having required appellee to refund the purchase money, with interest, the case must be, and is hereby, *affirmed.*

After the delivery of the foregoing opinion the clerk entered a judgment affirming the decree appealed from without awarding the five *per centum* damages provided for in Code 1906, § 4926.

Thereupon appellee moved for an amendment of the judgment so as to allow him five *per centum* on the value of the land, which motion was sustained, the opinion being in these words:

*Per Curiam.* Motion to allow five per cent. damages sustained.