## J. C. Penney Co., Inc., *v.* Scarborough.

(Division B.  Feb. 13, 1939.)

[186 So. 316.  No. 33572.]

Carl Marshall, of Gulfport, for appellant.

Bidwell Adam, of Gulfport, and Chalmers Potter, of Jackson, for appellee.

314

Argued orally by **Carl Marshall**, for appellant, and by Chalmers **Potter**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

This appeal is from a judgment of the circuit court of Harrison County awarding damages to appellee for personal injury alleged to have been caused by reason of some harmful or poisonous substance contained in a pair of socks purchased from appellant at its retail store in the City of Gulfport. The socks were purchased by the retailer from a reputable manufacturer, and were sold to appellee by a sales clerk in the store without knowledge that the same were either poisonous, or that they could not be worn by the purchaser without any harmful effect. After the socks had been worn one day, during which time it became necessary for the appellee to go into the water several times, his feet and ankles became irritated and inflamed. The fair import of the testimony of appellee's physician is that this condition was either caused by some harmful or poisonous substance contained in the dye of the socks or that it was due to an unusual or exaggerated natural sensitiveness of the skin to wearing colored socks. This question would have been for the determination of the jury if the testimony had otherwise established a prima facie case of

liability under the legal principles applicable thereto, since the appellee testified that he had been able prior to that time to wear colored socks without any harm resulting therefrom; but that after consulting the physician he began wearing white ones.

During the negotiations leading up to the sale the appellee, while carefully examining the socks, noticed a chalky substance that could be felt by rubbing the fingers against the fabric. The attention of the salesman was called to this fact, and he thereupon assured appellee that the substance referred to was not harmful. He also assured him that the socks would not fade, and that no harm could come to him from wearing them; and also expressly represented that he knew they would give the purchaser satisfaction in every respect.

There was no testimony of sufficient probative value to present an issue for the jury or warrant a finding that there was any connection between the existence of the chalky substance on the socks and the injury complained of. Therefore, the appellant was neither guilty of negligence nor a breach of the alleged expressed warranty insofar as the assurances of the sales clerk on that point are concerned. The presence of this chalky substance, which was called to the attention of the sales clerk by the appellee, was mainly what prompted the conversation and the representations on the part of the clerk relative to whether the socks contained any harmful quality.

As to the representations in regard to the socks not fading, and also to the effect that the dye would not run, and that they were neither harmful nor poisonous, the proof discloses that in view of the enormous quantity of socks received from the same manufacturer and sold by appellant of like kind and character every year, many of which were handled in shipments of 140 dozen pairs through the same local store at Gulfport, and without complaint from the customers, the sales clerk had good reason to believe, and so far as the evidence in this case

indicates anything to the contrary, he did honestly believe, that the pair of socks sold to appellee would likewise prove satisfactory. It is at least not shown that either the sales clerk or the employer knew anything to the contrary, or could have known the same by the exercise of reasonable care.

Appellee concedes that in order for the evidence to be sufficient to establish the breach of the alleged express warranty made by the sales clerk in this transaction, the plaintiff must prove: first, an express warranty; second, a consideration; third, scienter; fourth, inducement and reliance; fifth, the breach of warranty; and, sixth, the damage. Then, in support of his contention that the third and very vital element above mentioned was likewise present in the instant case, the rule announced in Vincent v. Corbett, 94 Miss. 46, 47 So. 641, 21 L. R. A. (N. S.) 85, and in other cases, is cited on the proposition that it is not always necessary to prove that the defendant actually knew the falsity of his representations; scienter being sufficiently proven by showing that the representation was made as of knowledge, when in fact the defendant was either without knowledge upon the subject, or when, by reason of his position, he should have known the truth or the falsity of the representation made. It must be assumed, however, in the case at bar that in the absence of proof that the sales clerk was a chemist or other technician, possessed of superior knowledge on the subject, that his representations and commendation of the merchandise were being made only in the light of his experience in handling this brand of socks. Except for that experience, the purchaser was in position to know as much as the sales clerk about whether the dye would fade and cause injury to the feet, and the only reasonable inference is that he was using what is commonly known as "dealer's talk" in endeavoring to make the sale, while acting in good faith in the light of his experience and observation in handling this particular

brand of merchandise, not amounting to an express warranty under the rule hereinbefore cited and relied on by appellee as to the essential elements of an express warranty on the part of a seller other than the manufacturer.

Neither can legal liability of the appellant under the facts of this case be predicated upon the holding in J. C. Penney Company v. Morris, 173 Miss. 710, 163 So. 124. In that case it was shown that when the customer discovered that the heel on a shoe which was being purchased from the manager of the store was loose, and called the fact to the manager's attention, he assured and guaranteed the customer that the heel would not come off. However, the first time she wore the shoe she fell, after walking a few feet, and broke her ankle. Immediately, the detached shoe heel was found on the floor nearby. The suit was in tort and was based on the proven negligence of the manager under the circumstances above mentioned; whereas, in the present case, the only unusual condition about the socks to attract attention was the presence of the chalky substance thereon, which was not shown to be harmful in contradiction of any statement made by the sales clerk in regard thereto. Therefore, the decision in the Morris case can not be invoked in the instant case to sustain liability on the theory of negligence, nor do we think that a case on the breach of an express warranty is made by the proof, for the reason hereinbefore stated.

Reversed and judgment here for appellant.